UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ENERGY NORTHWEST, a Washington municipal corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>SPX HEAT TRANSFER, INC., a Delaware corporation; SPX HEAT TRANSFER LLC, a Delaware limited liability company,<br><br>    Defendants. | 2:13-cv-5151-SAB<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

    Before the Court is Defendant's Motion for Partial Summary Judgment, ECF No. 54. The motion was heard without oral argument.

    Defendant asks the Court to enter an Order that (1) precludes Plaintiff from recovering damages for any alleged loss of revenue gain, including loss of revenue gain associated with removal of the reheat system from the project's scope and strikes any claim for such damages; (2) precludes Plaintiff from recovering any amount paid to B&W in settlement of the lawsuit between B&W and Plaintiff and strikes any claim for such damages; and (3) precludes Plaintiff from recovering damages for any alleged design or manufacturing defect (the "fit-up" issue) under its breach of warranty claim because Plaintiff did not comply with the conditions

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1**

precedent to asserting such a claim. ECF No. 54 at 3.

**MOTION STANDARD**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); Fed. R. Civ. P. 56(c). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex*, 477 U.S. at 325. If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 324; *Anderson*, 477 U.S. at 250.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law School*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

///

///

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2**

# FACTS

The following facts are taken from the parties' Statements of Material Facts. Where the parties disagree, the Court viewed the facts in the light most favorable to Plaintiff, the non-moving party.

### 1. The Agreement

On or about February 2, 2009, Plaintiff Energy Northwest and Yuba Heat Transfer, Inc. executed Agreement No. 327447—Condenser Modular Bundles and Water Boxes (as amended, the "Agreement").[1] Plaintiff's LR 56.1(b) Response to Defendant's Statement of Material Facts, ECF No. 86 at ¶3. Pursuant to the Agreement, Defendant was expected to analyze, design, manufacture, and deliver replacement condenser modular bundles, water boxes and related components, including related support services. *Id.* at ¶6. These modules and related components were to be designed to fit within the Columbia Generating Station's existing condenser shell. *Id.*

### 2. The Reheat System

In addition, the Agreement originally included a provision that Defendant would provide a "reheat system." *Id.* at ¶7. The "reheat system" was never installed. *Id.* Defendant failed to account for the reheat system in its design of the condenser modules. *Id.* The parties disagreed whether the failure to provide this system would affect the bottom line of the contract. Defendant insisted that the reheat system and its associated sub-cooling temperature incentive be removed from the Agreement without any credit to Plaintiff, which Plaintiff rejected. *Id.* Plaintiff then generated a negotiation plan that removed the reheat system, the associated sub-cooling incentive, and the back-pressure incentive from the Agreement as a no-cost change order, but Defendant rejected this proposal. *Id.*

### 3. The Agreement–Limits of Liability

The Agreement between Plaintiff and Defendant contained the following

---

[1] Yuba Heat Transfer, Inc. was acquired by Defendant in December, 2009.

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3**

limitations of liability:

**GP-7.2 (Limitation of Liability)**
The Contractor's[2] liability under this Contract shall not include losses (including the loss of revenue) by Energy Northwest, its Participants, or the Bonneville Power Administration, which result from the loss of power production at the site or the cost of replacement power purchased by any of these as a result of such loss of production.

**GP-58 (Limitation of Liability)**
Contractor's total liability to Energy Northwest for claims based on Contractor's performance or breach of this Agreement, whether based in contract tort or otherwise, shall not exceed the Contract price, PROVIDED that this limitation of liability shall not be applicable to Contractor's indemnity obligations to Energy Northwest for third-party personal injury or death, indemnity obligations arising from claims for patent or copyright infringement, or any other indemnity obligations of Contractor under this Agreement.

Neither the Contractor nor its subcontractors shall be liable to Energy Northwest whether in contract, in tort (including negligence and strict liability), under any warranty, or under any other legal or equitable theory of law, for any special, indirect, incidental, or consequential loss or damage whatsoever, or for loss of use of equipment or power system, cost of capital, loss of profits or revenues or the loss of use thereof, cost of purchased or replacement power (including additional expenses incurred in using existing power facilities), or claims of any customers of Energy Northwest.

The Agreement also contained Warranty provisions that include the following:

**GP-21.1**
The Contractor warrants the work performed under this Contract conforms to the Contract requirements and is new and free of any defect of equipment, goods, materials or design (to the extent that design is specified as a requirement within the scope of this Contract) furnished, or workmanship performed by the Contractor or any of its subcontractors or suppliers at any tier. Such warranty shall begin

---

[2] Defendant is the contractor.

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4**

upon receipt of the Contractor's "Final Statement and General Release" and shall continue through July 30, 2017. Under this warranty, the Contract shall remedy at its own expense any such failure to conform or any such defect. Energy Northwest's warranty with respect to work repaired or replaced hereunder will run six (6) years from the date of such repair or replacement, or to the end of the full warranty provided, whichever is longer but in no event 12 months after the expiration of the original warranty. Defects in design or manufacture of equipment specified by Energy Northwest on a "brand name and model" basis shall not be included in this warranty.

**GP-21.3**
Energy Northwest shall provide the Contractor a written notice within a reasonable time after discovery of any failure, defect or damage. If the Contractor fails or refuses to correct or replace the nonconforming material item, or work within a reasonable period after receipt of notice from Energy Northwest specifying such failure, Energy Northwest may, by contract or otherwise, correct or replace the nonconforming supplies with similar supplies and charge to Contractor the direct cost occasioned by Energy Northwest thereby. In addition, if the Contractor fails to furnish timely disposition instructions, Energy Northwest may dispose of the nonconforming supplies for the Contractor's account in a similar manner, in which case Energy Northwest is entitled to reimbursement from the Contractor or from the proceeds for the reasonable expenses for the care and disposition of the nonconforming supplies, as well as for excess costs incurred or to be incurred. Equipment repaired, rebuilt or modified by Energy Northwest or other Third Parties, without Contractor's written consent, carries no warranty either express or implied. Tube plugging that may be necessary to stop or prevent tube leakage is not considered a repair, rebuild, or modification and does not require Contractor's written consent. Failure to agree upon any determination to be made under this provision shall be a dispute within the meaning of the provision of this Contract entitled "Disputes".

**GP-21.12**
The warranties set forth in this Contract are exclusive and in lieu of all other warranties, whether statutory, expressed or implied

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5**

(including warranties of merchantability or fitness for a particular purpose).

The Agreement contained the following clause:

**GP-2**
The Contract documents embody the entire agreement between Energy Northwest and the Contractor. Energy Northwest and Contractor represent that in entering into this Contract they do not rely upon any previous oral, written, or implied representation, endorsement or understanding of any kind. Any modification of this Contract shall be in writing and executed in the same manner as the Contract. The Contract shall be binding upon the parties hereto and their legal successors, representatives, and assigns.

### 4. Babcock & Wilcox Nuclear Energy

Plaintiff also contracted with Babcock & Wilcox Nuclear Energy, Inc. ("B&W") to remove the existing condenser modules and install the replacement condenser modules and components designed and supplied by Defendant. ECF No. 86 at ¶4. In 2011, B&W sued Plaintiff in the U.S. District Court, Eastern District of Washington. The parties eventually negotiated and signed a settlement agreement in which Plaintiff agreed to pay B&W $19,925,000. *Id.* at ¶14. The Settlement Agreement contains the following language:

> Energy Northwest and B&W agree that a portion of the payment contained in this Agreement compensates B&W for its claims related to deficiencies in the design documents prepared and components manufactured by SPX Heat Transfer Inc.

*Id* at ¶16.

### 5. Plaintiff's Damages Request

Plaintiff is seeking damages in three categories: (1) damages under the Agreements' Performance Payment Adjustment; (2) the "value of the reheat system and damages incurred by Energy Northwest resulting from SPX's failure to provide a reheat system"; and (3) damages caused by the failure of SPX's condenser and related components to fit together with each other and the existing

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6**

conditions. *Id.* at ¶17. With respect to Category No. 2, Plaintiff requested damages in the amount of $14,782,500, which is based on a November 4, 2008 email from David Cooley, Vice-President at SPXHT, in which he stated that the value of the reheat system was approximately $14,7872,500 over a 30 year-life cycle. *Id.* at ¶18. With respect to Category No. 3, Plaintiff indicated that it is seeking recovery of amounts claimed by B&W relating to fit-up damages caused by Defendant.

## WASHINGTON COMMON LAW / WASHINGTON UCC

The parties agree that Washington law applies to the interpretation of the Agreement. The parties appear uncertain, however, whether the Washington common law, or the Washington Uniform Commercial Code apply.

The UCC does not apply to construction contracts. *Tacoma Athletic Club, Inc. v. Indoor Comfort Systems, Inc.*, 79 Wash.App. 250, 255 (1995). In determining whether the parties entered into a construction contract, Washington courts apply the predominate factor test. *Id.* This test looks at whether the predominant factor, that is, the thrust or the purpose, reasonably stated, is "the rendition of service, with goods incidentally involved (e.g., contract with artist for painting) or is a transaction of sale, with labor incidentally involved (e.g., installation of a water heater in a bathroom)." *Id.* If the sale of goods dominates, Article 2 governs; if the sale of services dominates, Article 2 does not apply. *Id.*

Based on the Court's understanding of the facts, including the language of the Agreement, the parties' negotiations[3], the warranty given in the contract, and scope of the project covered by the Agreement, the Court concludes that the predominant aspect of the contract was for work, labor and materials. As such, the Court will apply the Washington common law, and not the Washington UCC.

---

[3] In ¶ 5 of its Statement of Material Fact, Plaintiff detailed the extensive negotiations between the parties regarding the technical and commercial terms of the Contract. ECF No. 86.

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7**

Generally, a party injured by breach of contract is entitled (1) to recovery of all damages that accrue naturally from the breach; and (2) to be put into as good a pecuniary position as it would have had if the contract had been performed. *Eastlake Constr. Co. v. Hess*, 102 Wash.2d 30, 39 (1984). "The purpose of awarding damages for breach of contract is neither to penalize the defendant nor merely to return to the plaintiff that which he has expended in reliance on the contract." *Platts v. Arney*, 50 Wash.2d 42, 46 (1957). Rather, the purpose is to place the plaintiff, as nearly as possible, in the position it would be in had the contract been performed. *Id.*

In *Eastlake*, the Washington Supreme Court set forth the proper measure of the owners' damages for breach of a construction contract resulting in both remediable and irremediable defects. 102 Wash.2d at 32. It recognized that in the case of construction contracts, special problems can occur when trying to put the injured party in the pecuniary position it would have enjoyed had the contract been properly performed by the builder. *Id.* at 40. It relied on section 347 of the Restatement of Contracts 2d, which states that subject to certain limitations, the injured party has a right to damages based on the injured party's expectation interest as measured by (a) the loss in the value to the injured party of the other party's performance caused by its failure or deficiency, plus (b) any other losses, minus (c) any cost or other loss avoided by not having to perform. *Id.* at 46. As the Court explained, contract damages are ordinarily based on the injured party's expectation interest and are intended to give it the benefit of its bargain by awarding it a sum of money that will, to the extent possible, put it in as good a position as it would have been had the contract been performed. *Id.* citing to Comment *a.* of § 246. On the other hand, the court recognized that it may be difficult to determine an injured party's expectation interest. *Id.* It then relied on § 348, noting that this section includes measures of damages specifically applicable to construction contracts. *Id.* at 47.

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8**

Section 348(2) provides, in pertinent part:

> If a breach results in defective or unfinished construction and the loss in value to the injured party cannot be proved with sufficient certainty, the owner may recover damages based on (a) the diminution in the market price of the property caused by the breach; or (b) the reasonable cost of completing performance or of remedying the defects if that cost is not clearly disproportionate to the probable loss in value to him.

*Id.*

The Comment to section 348 provides helpful analysis in analyzing Plaintiff's damages request.

> c. Incomplete or defective performance. If the contract is one for construction, including repair or similar performance affecting the condition of property, and the work is not finished, the injured party will usually find it easier to prove what it would cost to have the work completed by another contractor than to prove the difference between the values to him of the finished and the unfinished performance. Since the cost to complete is usually less than the loss in value to him, he is limited by the rule on avoidability to damages based on cost to complete. See § 350(1). If he has actually had the work completed, damages will be based on his expenditures if he comes within the rule stated in § 350(2).
>
> Sometimes, especially if the performance is defective as distinguished from incomplete, it may not be possible to prove the loss in value to the injured party with reasonable certainty. In that case he can usually recover damages based on the cost to remedy the defects. Even if this gives him a recovery somewhat in excess of the loss in value to him, it is better that he receive a small windfall than that he be undercompensated by being limited to the resulting diminution in the market price of his property.
>
> Sometimes, however, such a large part of the cost to remedy the defects consists of the cost to undo what has been improperly done that the cost to remedy the defects will be clearly disproportionate to the probable loss in value to the injured party. Damages based on the cost to remedy the defects would then give the injured party a

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9**

> recovery greatly in excess of the loss in value to him and result in a substantial windfall. Such an award will not be made. It is sometimes said that the award would involve "economic waste," but this is a misleading expression since an injured party will not, even if awarded an excessive amount of damages, usually pay to have the defects remedied if to do so will cost him more than the resulting increase in value to him. If an award based on the cost to remedy the defects would clearly be excessive and the injured party does not prove the actual loss in value to him, damages will be based instead on the difference between the market price that the property would have had without the defects and the market price of the property with the defects. This diminution in market price is the least possible loss in value to the injured party, since he could always sell the property on the market even if it had no special value to him.

*Id.* at 47-48.

## ANALYSIS

While the above-paragraphs provide the background for the type of damages to which Plaintiff is entitled if it can show that Defendant breached the Agreement, the question the Court must answer in ruling on Defendant's Motion for Partial Summary Judgment is whether the Agreement entered into between the parties limits the type of damages that can be sought by Plaintiff.

Defendant argues that Plaintiff's Category 2 and 3 damages request are consequential damages precluded by the Agreement. Specifically, it seeks to (1) preclude Plaintiff from recovering damages for any alleged loss of revenue gain, including the loss associated with removal of the reheat system; (2) preclude Plaintiff from recovering any amount paid to B&W in the settlement of the lawsuit; and (3) preclude Plaintiff from recovering damages for the alleged design or manufacturing defect.

### 1. Loss of Revenue Gain

Defendant argues that the Agreement prohibits Plaintiff from recovering any damages for any alleged loss of revenue caused by the failure to provide the reheat system. As set forth above, under Washington law, Plaintiff is entitled to request

damages based on its expectation interest. While Defendant may be correct that the loss of revenue gains may not be an appropriate measure of those damages, it is premature at this stage of the proceedings to preclude Plaintiff from presenting its claim for Category 2 damages to the jury. Questions of material fact exist that prevent the Court from granting Defendant's request to strike Plaintiff's claim for Category 2 damages.

### 2. Amount paid to B&W in settlement

Defendant argues that any amount tied to the B&W Settlement is consequential damages that are not recoverable under the Agreement. The Court disagrees. Rather, Plaintiff's request for Category 3 damages is linked to the measure of the steps taken to remedy the alleged noncompliance by Defendant. At the very least, questions of material fact exist that prevent the Court from granting Defendant's request to strike Plaintiff's claim for Category 3 damages.

### 3. Breach of Warranty Claim

Defendant asserts that Plaintiff is prevented from seeking damages for its breach of warranty claim ("fit-up" issues) because Plaintiff did not comply with the conditions precedent to asserting such a claim, as required under the Agreement. Questions of material fact exist that prevent the Court from granting Defendant's request to strike Plaintiff's claim for damages caused by the alleged breach of warranty.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion for Partial Summary Judgment, ECF No. 54, is **DENIED**.

2. Plaintiff's Motion to File Surreply, ECF No. 106, is **DENIED**, as moot.

3. Plaintiff's Motion to Expedite, ECF NO. 107, is **GRANTED**.

///
///
///

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 11

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this Order and provide copies to counsel.

**DATED** this 1st day of September, 2015.



                                    Stanley A. Bastian
                                    United States District Judge

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12**